

# CR 98-105

### IN THE SUPREME COURT OF ARKANSAS

**OFFICE COPY**

YITZHAK ABBA MARTA                                          APPELLANT

    VS.                              NO. *CR 98-105*

STATE OF ARKANSAS                                          APPELLEE


APPEAL FROM WASHINGTON COUNTY CIRCUIT COURT


HONORABLE WILLIAM A. STOREY,  JUDGE

ABSTRACT AND BRIEF FOR APPELLANT


DENNY HYSLIP
Public Defender
ID#77068
280 N. College,  Suite 100
Fayetteville,  AR  72701
(501)  444-1595




**FILED**

AUG 1 9 1998

LESLIE W. STEEN
CLERK

<u>THE ARGUMENT</u>

I.   THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR
     A DIRECTED VERDICT AND THEN ALLOWING THE CASE TO BE
     PRESENTED TO THE JURY WITHOUT SUFFICIENT EVIDENCE TO
     CORROBORATE THE ACCOMPLICE'S TESTIMONY.

At the onset of Yitzak Abba Marta's (Marta) trial, Adam
Blackford (Blackford) was declared an accomplice as a matter
of law.  (Tr. 739, Ab. 13).   Blackford testified as an
accomplice.  At the close of the State's case Marta moved for
a directed verdict based on insufficient evidence to
corroborate an accomplice's testimony.  (Tr. 1174-1175, Ab.
176).  The motion was denied by the trial court.  (Tr. 1175,
Ab. 176).  Following the presentation of the defense's case,
Marta renewed his directed verdict motion, and was again
denied by the trial court.   (Tr. 1289, Ab. 237).   The
testimony of such an accomplice, and its weight, is controlled
by Arkansas statute.

Ark. Code Ann. § 16-89-111(e)(1) provides:

A conviction cannot be had in any case or felony
upon the testimony of an accomplice unless
corroborated by other evidence tending to connect
the defendant with the commission of the offense.
The corroboration is not sufficient if it merely
shows that the offense was committed and the
circumstances thereof.

Ark. Code Ann. § 16-89-111 (Michie 1997).

Testimony of an accomplice, standing alone is

240

insufficient to support a felony conviction. _Johnson v. State_, 303 Ark. 12,17, 792 S.W.2d 863 (1990). Accomplice testimony must be corroborated by other evidence tending to connect the defendant with the commission of the offense. _Id_. The test for determining the sufficiency of the evidence is whether, if the testimony of the accomplice were eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. _Davis v. State_, 310 Ark. 582,584, 839 S.W.2d 182 (1992); (citing _Andrews v. State_, 305 Ark. 262, 807 S.W.2d 917 (1991)). see also, _Daniels v. State_, 308 Ark. 53,56, 821 S.W.2d 778 (1992). When Blackford's testimony is removed from this case, the evidence is clearly insufficient to connect Marta with the crime.

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. _Passley v. State_, 323 Ark. 301,305, 915 S.W.2d 248 (1996) (quoting _Williams v. State_, 321 Ark. 635, 906 S.W.2d 677 (1995)). On appellate review, it is only necessary for the court to ascertain that evidence which is most favorable to appellee, and it is permissible to consider only the evidence which supports the guilty verdict. _Choate v. State_, 325 Ark. 251,254, 925 S.W.2d 409 (1996)(quoting _King v. State_, 323 Ark. 671, 916 S.W.2d 732

(1996)(other citations omitted)).

Two rings in Marta's possession were the centerpiece of the State's attempt to connect him with the murder of the victim. When closely scrutinized, the State not only failed to prove the rings in his possession were the property of the victim, but that Marta's possession of the rings established the commission of any crime. Consequently, it is impossible for the rings to connect Marta with any crime, much less the crime at issue here.

Leovas Walker, mother of the victim, testified only that the victim had "some rings" missing from his apartment. (Tr. 970, Ab. 74). The State's failure to elicit from the victim's mother either a description, or the number of rings missing, brings into question the relevancy of the Marta's possession of any rings.

Further, the testimony of Marta's wife in no way connects the Appellant's possession of two rings to the victim. On direct examination, Rochelle Marta, Appellant's wife, testified she saw two rings that she had never seen when she checked his wallet after Marta arrived home the evening of the murder. (Tr. 1084, Ab. 120). She not only did not see him place the rings in the drawer, on cross-examination, she was unable to definitively state the last time she looked

242

in the drawer where Appellant kept his wallet. (Tr. 1096, Ab. 121). While testifying that Marta told her several stories concerning the rings, she stated he never told her whose rings they were. (Tr. 1088-1089, Ab. 117). On both direct, and cross-examination, she admitted she never told police or Appellant's attorney anything about any rings prior to trial. (Tr. 1088-1089, Ab. 118,121). She further testified that she told police a completely different story about the rings. (Tr. 1090, Ab. 121). Not only did the State fail to establish that the rings belonged to the victim in this case, they failed to prove that Marta returned home with any rings the night in question.

In other testimony, the State attempted to bolster this tenuous connection by introducing evidence of Marta's later attempt to pawn some unidentified rings. Sergio Elilzade, a friend of Appellant's father, testified Marta had some rings in his possession prior to his arrest (Tr. 961, Ab. 71), and that he accompanied him to a pawn shop in an attempt to pawn them. (Tr. 962, Ab. 72). Again, the State failed to make any attempt to have the witness describe the rings. Even Blackford testified he never saw Marta with any rings. (Tr. 1023, Ab. 109). Nothing presented by the State through testimony relating to the rings establishes the commission of

any offense, much less connects Appellant to this offense.

The State further relied upon the testimony of two inmates incarcerated in the county jail with Marta to establish his culpability.  However, nothing in the testimony of the State's first witness, Harold Galbraith, connects Marta to the crime.

Galbraith, a inmate in the county jail with Appellant, and a witness for the State, denied Marta ever said anything to him about killing the victim.  (Tr. 1060, 1069, Ab. 110). He testified that Marta told Blackford that  Blackford should have covered his tracks.  (Tr. 1061, Ab. 111).  When pressed by the prosecutor, Galbraith refused to definitively testify that Marta said he (Appellant) covered his own tracks.  (Tr. 1062, Ab. 111).  He also testified Marta said "something like" whoever killed  homosexuals, "[t]hey're heroes, whoever did it."  (Tr. 1064, Ab. 113).  He further testified Blackford was talking to  people and Appellant  "kept his mouth shut."  (Tr. 1065, Ab. 113).  On cross-examination, he testified that Adam Blackford told him, "they were going to rob some punk or Blackford was going to rob some punk."  (Tr. 1066, Ab. 113). Galbraith's testimony, while possibly establishing that an offense was committed, in no way established a connection between Appellant and that offense.

This Court, in reversing the conviction of a defendant who said the victim "got what he deserved" said, "The evidence produced by the State, other than the testimony of the accomplice, does no more that place Mr. Priest in a location . . . the crime against Mr. Carr was discussed.  That is not sufficient to satisfy the requirement of § 16-89-111(e)(1)."  Gordon v. State, 326 Ark. 90,96, 931 S.W.2d 91 (1996).  While Marta made a similar comment, it does not connect him to the offense.

Not only is Marta's presence at a place where the crime was discussed insufficient to satisfy the statute, the mere fact that Marta was present at the crime scene is clearly not substantial evidence in and of itself.  Blackford testified that he and Marta went to the victim's home that night.  (Tr. 1011, Ab. 90).  Though Marta freely testified he was also present at the victim's home that night (Tr. 1245, Ab. 210), his presence at the victim's home is not enough.  The mere presence of a person at the scene of the crime is not proof of his guilt.  Green v. State, 265 Ark. 179, 577 S.W.2d 586 (1979).

Dana Coleman, whose jail stay also coincided with the Appellant's, was the second inmate to testify for the State.  Coleman testified Marta told him he and Blackford went to Club

West and picked up a transvestite.   (Tr. 1101, Ab. 123).
After learning that it was a man and not a woman, Marta became
angry (Tr. 1101-1102, Ab. 123), at which point Blackford came
in with a baseball bat and Appellant slugged the victim.   (Tr.
1102, Ab. 123).    The testimony of this witness, when
considered with the testimony and facts presented by the
State, casts serious doubt on the viability of Coleman's
testimony.

Coleman's testimony that Marta and Blackford picked up
the victim at Club West directly conflicts with the testimony
of Gremiko Hill that Appellant and Blackford met the victim at
a local bar, Ron's (Tr.929, Ab. 60).   No witness other than
Coleman testified that the victim was ever present at Club
West.

Coleman's testimony that Marta struck the victim with a
baseball bat is also contradicted by both the physical and
testimonial evidence presented by the State.   The Director of
the State Crime Laboratory testified that the  victim was
struck with a semi-sharp or semi-rounded weapon that he
believed would "favor metal" (Tr. 915, Ab. 45), and that the
toxicological report  found no wood fibers in the injuries.
(Tr. 915, Ab. 45).  Bill Baskin, a criminal investigator and
blood splatter analyst for the Arkansas State Police,

246

testified that, when he prepared his report, he was unaware that a crowbar was used, but made that assumption just from the blood pattern. (Tr. 1147, Ab. 153). He further testified that the weapon was narrow, "somewhere between probably three to less inches." (Tr. 1152, Ab. 158). Blackford admitted he used a crowbar to strike the victim. (Tr. 1036, Ab. 93). The only part of Coleman's testimony confirmed by the evidence was that the victim was a transvestite. These significant inconsistencies, combined with the circumstances surrounding Coleman's testimony, seriously call into question his credibility.

Coleman, an out of state resident, testified he was hoping to get a "deal" and his trial date was repeatedly moved to coincide with Marta's. (Tr. 1080, Ab. 124). On cross-examination, he testified his trial was scheduled the day following his testimony, and while he was not promised anything, he was hoping for a deal. (Tr. 1104-1105, Ab. 125). Coleman testified he was in jail less than 24 hours and that during that time Marta made the disclosure to him. (Tr. 1100-1101, Ab. 125). This directly conflicts with the State's other witness, Harold Galbraith, who testified that Marta "kept his mouth shut." It is hard to conceive that Marta, "who kept his mouth shut" around every other prisoner

during his eight month incarceration, would spontaneously implicate himself to Coleman whom he had just met.

Further casting doubt on Coleman's testimony is the strong possibility he received his information by reading Marta's paperwork while they were incarcerated together. Mark Killion, said he saw a person he did not know looking through Marta's files while they were in jail together. (Tr. 1206, Ab. 192). Interestingly, although Coleman denied rummaging through Marta's paperwork (Tr. 1108 Ab. 126) and was unable to recall if any other inmates had files or paperwork, he did recall Marta having paperwork. (Tr. 1107, Ab. 126). When determining whether there is substantial evidence to support the jury's finding, the court need only consider testimony lending support to the jury verdict and may disregard any testimony that could have been rejected by the jury on the basis of credibility. Hill v. State, 285 Ark. 77,82, 685 S.W.2d 495 (1985). Coleman's testimony concerning Marta's disclosure was clearly inconsistent with the testimony of all the other witnesses. The possibility that Coleman read Marta's paperwork prior to testifying is a further cloud on his testimony. Furthermore, the potential implications of the repeated delay in his trial date so that he could testify prior to his trial cast serious doubt on the validity of his

testimony.  When this Court considers the evidence it should disregard Coleman's testimony.

The State also introduced broken stereo and television parts from a local stream recovered by Anthony Smith, a detective with the Fayetteville Police Department.  (Tr. 1125-1131, Ab. 143).  Officer Smith testified that the items were recovered as a result of the cooperation of Adam Blackford.  (Tr. 1125, Ab. 143).  Again, as with much of the evidence discussed supra, the State failed to connect Marta with the recovered items.

Detective Smith also testified that evidence was removed from the crime scene and transported to the Arkansas State Crime Lab for analysis.  (Tr. 1136, Ab. 146).  Marta's blood, hair, saliva, and fingerprints were also submitted to the lab, and nothing which matched Appellant's samples were found on the items recovered from the crime scene.  (Tr. 1137, Ab. 147). Detective Smith's admission that nothing found at the crime scene connected Marta to the crime was confirmed by extensive testimony from Arkansas State Crime Laboratory employees.

Kenneth King, a latent fingerprint analyst at the Arkansas State Crime Laboratory, testified he examined over 25 items taken from the crime scene submitted by the Fayetteville

249

Police Department, and none matched Marta's finger or palm prints. (Tr. 1184-1185, Ab. 183-184). Chantelle Bequette, a criminologist and expert in hair and fiber analysis at the Arkansas State Crime Laboratory, testified she examined in excess of sixty pieces of evidence and samples submitted by the Fayetteville Police Department. (Tr. 1190-1191, Ab. 185-187). She testified there were no hairs or fibers from the victim on any of the Marta's clothing, nor were there any from Marta on items recovered from the victim. (Tr. 1191, Ab. 187). Bequette also testified on behalf of Lisa Channell, a serologist at the Arkansas State Crime Laboratory. (Tr. 1190, Ab. 187). Channell compared oral swabs and blood and saliva samples from Marta (Tr. 1192, Ab. 187) with the evidence gathered from the victim and the crime scene, including the bedding, carpeting, and sheetrock. (Tr. 1193, Ab. 188). None of Marta's blood was found on anything submitted by the Fayetteville Police Department. (Tr. 1194, Ab. 188). There was not one piece of evidence in the State's presentation of scientific evidence that connected Marta with either the crime scene or the victim.

Bill Baskin, the criminal investigator and blood splatter analyst for the Arkansas State Police, also testified that an assailant would most likely have blood on them.

(Tr. 1160, Ab. 162).  The complete lack of the victim's blood on anything from Marta, discussed supra, combined with the testimony of his wife that she saw no blood on the Appellant when he arrived home that evening  (Tr. 1099, Ab. 122), failed to connect Marta to the commission of the crime.

In what the State admits is the "most direct piece of evidence in this entire case"  (Tr. 1035), Leovas Walker, the victim's mother, testified that Marta turned to her during a recess in the trial and said Blackford had killed her son due to his sexual preference and that he (Marta) was sorry.  She also testified that Marta said he did not do it.  (Tr. 975-976, Ab. 75).  Though Marta's action was ill-advised, it hardly implicates him in the victim's death.  In fact, if anything, the comments to Ms. Walker are exculpatory.  They contain no admission by Marta of any involvement in the victim's murder, and are just as consistent with innocence as with guilt, no matter how they were portrayed by the State.

The corroborating evidence presented at Marta's trial did not rise to the level necessary to present this case to the jury.  While the corroboration need not be substantial enough in and of itself to sustain a conviction, <u>Rhodes v. State</u>, 280 Ark. 156,160, 655 S.W.2d 421 (1983), and though the corroborating evidence may be circumstantial, the evidence

must be substantial.   <u>David v. State</u>, 295 Ark. 131,140, 748 S.W.2d 117 (1988).

The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Ark. Code Ann. §16-89-111(e)(1) (Michie 1997).   The corroboration required by §16-89-111(e)(1) relates to the material facts that go to the identity of the defendant in connection with the crime.   <u>Lee v. State</u>, 27 Ark. App. 198,204, 770 S.W.2d 148 (1989)(quoting <u>Gardner v. State</u>, 263 Ark. 739, 749, 569 S.W.2d 74, 79 (1978)).

The State's evidence, when viewed collectively and apart from accomplice Blackford's testimony, could hardly be characterized as substantial and utterly fails to connect Marta to the crime.   When evidence relating to the rings in Marta's possession is closely examined, not only did the State fail to establish that the two rings were the property of the victim, but they were unable to prove that possession of any rings by Marta was related to the commission of any offense.

The first inmate testifying for the State said Marta "kept his mouth shut" and denied Appellant ever said anything to him about the killing.   The second inmate's testimony was so contradictory to the State's own evidence that his credibility is questionable and easily discounted.

The physical evidence presented by the State contained not one shred of proof connecting Marta with the crime. Over 100 tests performed by the State, including an autopsy, failed to connect Marta to the crime in anyway. There was no evidence of physical contact or sexual activity. Absolutely no scientific evidence was ever presented establishing Marta's connection to the crime. The comments made by Marta to the victim's mother, were exculpatory and as consistent with innocence as with guilt.

Not only did the evidence apart from Blackford's testimony fail to rise to the level of substantial, but the evidence that did corroborate Blackford's testimony implicated Blackford and Blackford only. When the testimony of an accomplice is corroborated as to particular material facts, the factfinder can infer the accomplice spoke the truth to all. Orsini v. State, 281 Ark. 348, 665 S.W.2d 245, cert denied, 105 S.Ct. 162 (1984); Olles & Anderson v. State, 260 Ark. 571, 542 S.W.2d 755 (1976). Not only do the corroborated material facts implicate Blackford and not Marta, there are significant aspects of his testimony that were not corroborated by the evidence, casting serious doubt on his credibility.

Blackford testified that while Marta was in the bedroom

with the victim, he removed several items from the home of the victim (Tr.1013, Ab. 99), but later destroyed them and put them in the river. (Tr. 1049, Ab. 106). While self incriminating, no physical evidence was ever presented connecting Appellant with those items.

In fact, Blackford testified that he removed several items of the victim's property from the home (Tr. 1013, Ab. 99), placed them in his pickup and then waited awhile. (Tr. 1015, Ab. 99). He also slashed the tires on the victim's truck (Tr. 1055, Ab. 109) and disabled the phones. (Tr. 1017, Ab. 103). Although these acts were confirmed by testimony, they implicate only Blackford.

He then testified he found a flashlight in the victim's home (Tr. 1034, Ab. 91), looked through another bedroom (Tr. 1034, Ab. 99), then went into the bedroom where Appellant and the victim were in bed (Tr.1034, Ab. 100) and proceeded to rummage through the darkened bedroom (Tr. 1038, Ab. 100) looking through almost every drawer in the room (Tr. 1035, Ab. 100) without the victim responding in any manner. A conservative estimate of the timing of these events, combined with the complete lack of physical evidence placing Marta at the scene, casts serious doubt on the credibility of this testimony.

254

Contrary to Blackford's testimony, Marta testified that he entered the victim's bedroom and laid on the bed until discovering that the victim was really a man at which point he left. (Tr. 1247, Ab. 211). Blackford's testimony raises several critical questions. First, it seems implausible that Blackford could enter the bedroom with a flashlight and look through the entire bedroom without any response from the victim. Also, if Marta and the victim were in bed long enough that Blackford was able to do all the things he testified he did, it seems impossible that there was no physical evidence of Marta's presence anywhere in that bedroom.

Dr William Sturner, chief medical examiner for the Arkansas State Crime Laboratory, testified there was no indication of sexual activity. (Tr. 919, Ab. 49). Chantelle Bequette, a criminologist and expert in hair and fiber analysis at the Arkansas State Crime Laboratory, testified there were no hairs or fibers from the victim on any of the Appellant's clothing, nor were there any from the Appellant on any items recovered from the victim. (Tr. 1191, Ab. 187). Bequette also testified that oral swabs and blood and saliva samples from Marta (Tr. 1192, Ab. 187) were compared with evidence gathered from the victim and the crime scene (Tr. 1193, Ab. 187) and that none matched the Appellant's. (Tr.

255

1194, Ab. 187).

Blackford testified that he cleaned things up and wiped things down (Tr. 1020, Ab. 104), trying to hide what he did. (Tr. 1047, Ab. 105). He also testified he never saw Appellant "wiping anything down or nothing. (Tr. 1043, Ab. 104). The complete lack of any physical evidence, discussed supra, connecting Appellant to the crime, combined with Blackford's testimony that Marta did not engage in any attempt to cover his tracks, cast serious further doubt on his credibility.

Another important aspect of Blackford's testimony calling into question his credibility is his account of the murder. Blackford testified that both he and Marta hit the victim numerous times with a crowbar. (Tr. 1017-1019, Ab. 102). He also testified that in an earlier statement to the State that neither he nor Marta strangled the victim. (Tr. 1055, Ab. 108). The testimony of the chief medical examiner established the cause of death as a combination of strangulation and blunt force injuries. (Tr. 907, Ab. 39). Blackford's account of the murder is not corroborated by the medical examiner's testimony, further allowing a factfinder to find his testimony less than credible. What evidence did corroborate the accomplice's testimony, implicated the accomplice alone. The significant evidence presented that was in direct conflict

with the accomplice's testimony casts serious doubt on the credibility of Blackford's testimony.   Not only did the evidence cast serious doubts on the credibility of Blackford, it did not rise to the level to present this case to a jury.

"Substantial evidence is that which is forceful enough to compel a conclusion one way or the other and pass beyond mere suspicion and conjecture. " Passley v. State, 323 Ark, 301,305, 915 S.W.2d 248 (1996)(citing Drummond v. State, 320 Ark. 385, 897 S.W.2d 553 (1995)).   "Further, circumstantial evidence may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded." Id. at 306. (citing Nooner v. State, 322 Ark. 87, 907 S.W.2d 677 (1995)).   Not only does the evidence not compel a conclusion one way or the other, but it is impossible to conclude his guilt without resorting to speculation and conjecture.

The rest of the State's evidence standing alone can hardly be characterized as substantial, nor did it corroborate the accomplice's testimony sufficiently to present this case to the jury.   Appellant respectfully requests this Court reverse and dismiss his conviction based on the trial court's erroneous denial of Marta's motion for a directed verdict.

II.   MR. MARTA'S RIGHT TO A FAIR TRIAL WAS IRREPARABLY HARMED BY THE PREJUDICIAL INTRODUCTION OF A PAST ARREST.

The State, by asking Marta about a prior arrest irreparably prejudiced his right to a fair trial. After Appellant's objection and motion for a mistrial was denied, the admonishment given to the jury did not cure the prejudicial effect of the evidence.

Specific instances of conduct may be used to impeach the credibility of a witness by the use of Rule 608(b) which states in pertinent part:

> Specific instances of the conduct of a witness, for the purposes of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . .

Green v. State, 59 Ark. App. 1,3,  953 S.W.2d 60 (1997). Reversing the defendant's conviction in Green, the court said, "[w]hile an absence of respect for another's property is an undesirable trait, it does not directly indicate an impairment of the trait of truthfulness." Id. at 4.  (citing Rhodes v. State, 276 Ark. 203, 634 S.W.2d 107 (1982)0. "In Rhodes, the court noted distinctions between conduct such as false swearing, fraud, and swindling (which does relate to

258

truthfulness) and conduct such as shoplifting, drug crimes, and assault (which ordinarily do not)." <u>Green</u> at 4. A prior arrest for theft of property, aggravated robbery, and aggravated assault are charges that have no bearing on a defendant's ability to testify truthfully before a tribunal.

This Court has articulated various policy reasons for limiting the rule to offenses clearly indicative of truthfulness, including that "a defendant stands the possibility of conviction by reputation for unsavory but unrelated acts which have no real bearing on veracity..." <u>Rhodes v. State</u>, 276 Ark. 203,211, 634 S.W.2d 107 (1982). The prosecutor, by asking Marta about a charge having no bearing on his veracity, he was clearly exposed to conviction for an unrelated act.

The prosecutor asked Marta if he was "charged with theft of property..." at which time Appellant objected. The prosecutor, without waiting for the court to rule, continued with "aggravated robbery and aggravated assault." (Tr. 1262, Ab. 221). Though Marta did later testify that he pled guilty to burglary (Tr. 1266, Ab. 226), he was not convicted of aggravated robbery or aggravated assault. The manner, form, and substance of the prosecutor's prior question fail the test this Court has articulated for such cross-examination.

259

For such a cross-examination to be appropriate under the rule this Court has articulated a three-part test:

"(1) the question must be asked in good faith;  (2) the probative value of the evidence must outweigh its prejudicial effect; and (3) the prior conduct must relate to the witness's truthfulness.

Green 953 S.W.2d at 3, (citing Echols v. State, 326 Ark. 917, 936 S.W.2d 509 (1996); Mackey v. State, 279 Ark. 307, 651 S.W.2d 82  (1983)).

Neither the manner, form, or substance, of the prosecutor's question complies with the "good faith" requirement.  By finishing the question in the face of the objection, not only was the State aware of the damaging prejudicial effect the introduction of the charge would have on the jury, but also of the possibility the objection would be sustained. The State's actions consequently fail the test for such cross-examination.

Following his objection, Appellant moved for a mistrial, (Tr.1264, Ab. 223), which the trial court overruled. (Tr. 1265, Ab. 226).  The trial judge offered to admonish the jury (Tr. 1264, Ab. 224) and Appellant stated his belief that such an admonishment would not cure the prejudicial effect the question had upon the jury.  (Tr. 1264, Ab. 224).  Though the jury was admonished (Tr. 1265, Ab. 226), it did not cure the

260

prejudice and a mistrial should have been granted.

"A mistrial is a drastic remedy to which resort should be had only when there has been an error so prejudicial that justice cannot be served by continuing the trial. <u>Reel v. State</u>, 318 Ark. 565, 570, 886 S.W.2d 615 (1994)(citing <u>Biggers v. State</u>, 317 Ark. 414, 878 S.W.2d 717 (1994)). Even though the granting of a mistrial is within the discretion of the trial court, <u>Scherrer v. State</u>, 294 Ark. 227, 742 S.W.2d 877 (1988), it may be granted where the error is beyond repair and cannot be corrected by any curative relief. <u>Id</u>. (citing <u>Cupples v. State</u>, 318 Ark. 28, 883 S.W.2d 458 (1994)).

Despite the wide discretion afforded the trial court on a mistrial motion, such motion may be granted "where there is abuse of discretion or manifest prejudice to the movant." <u>Heard v. State</u>, 322 Ark. 553, 560, 910 S.W.2d 663 (1995)(citing <u>Stewart v. State</u>, 320 Ark. 75, 894 S.W.2d 930 (1995)). Among the factors this Court may consider when reviewing the denial of a mistrial motion "are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice." <u>Id</u>. at 559.(citing <u>Stanley v. State</u>, 317 Ark. 32, 875 S.W.2d 493 (1994)).

Indirect or inadvertent references to a defendant's previous arrest or conviction record have not been sufficient for this Court to justify disturbing a trial judge's discretion in mistrial motions, see, e.g., Strawhacker v. State, 304 Ark. 726, 804 S.W.2d 720 (1991); Reel v. State, 318 Ark. 565, 570, 886 S.W.2d 615 (1994); and Heard v. State, 322 Ark. 553, 560, 910 S.W.2d 663 (1995). In this case, however, both the character and content of the prosecutor's question to Marta, combined with his intentional continuation after Appellant's objection (Tr. 1262, Ab. 221), easily distinguishes this case from those cited above. In fact, not only did the question include charges which did not result in conviction, but the charge was similar to the felony charge included in the Appellant's capital murder charge. (Tr. 19).

Although in the cases cited supra, this Court said that admonishment was sufficient to cure the references to the defendant's "record", the seriousness of the crime, the highly prejudicial nature of the information, and the circumstances surrounding the jury's exposure to the question, all led to a manifest prejudice to Marta that could not be cured by admonishment. For the foregoing reasons, Appellant respectfully requests that this Court overrule the trial court's denial of his mistrial motion and order a new trial.

262

III. MR. MARTA'S STATUTORY RIGHT OF CONFRONTATION WAS DENIED
WHEN OVER HIS OBJECTION A MEDICAL EXAMINER WHO DID NOT
PERFORM THE AUTOPSY ON THE VICTIM WAS ALLOWED TO TESTIFY.

Marta's statutory right of confrontation was denied when
the trial court overruled his objection to the testimony of
the medical examiner who did not perform the autopsy on the
victim.    The  testimony  of  the  appropriate  analyst  is
controlled by Ark. Code Ann. §12-12-313 Records as evidence -
Analyst's testimony.   (Michie 1995).

§12-12-313(c) requires a subpoena to the appropriate
analyst, and Marta satisfied this by subpoenaing Dr. Kokes,
who performed the autopsy on the victim, three (3) times.
(Tr. 212, 228, 244).  §12-12-313(d)(2) requires 10 days notice
of intent to cross-examine, and the three subpoenas, served on
Dr. Kokes March 20, April 15, and May 13, 1997 (Tr. 212, 228,
244),  provided sufficient notice to both the state, and the
examiner, that his presence was required at trial.

Dr. Sturner, who did not perform the autopsy, and was not
subpoenaed, was called by the State, and permitted to testify
over the objection of Marta. (Tr. 900, Ab. 32).  "Because the
statute does not contain a reasonable procedure for asserting
the right of confrontation when the right arises after the
trial has begun, the assertion of that right when it does
arise is all that is required of the accused and casts upon

263

the State the burden of either producing the witness for cross-examination or requesting a continuance in order to produce him." <u>Hendrix v. State</u>, 40 Ark. App. 52, 57-58, 842 S.W.2d 443 (1992). At that point, the trial court should have granted a continuance so the State could produce the witness.

Dr. Sturner's inability to testify to important material facts significantly prejudiced Appellant's defense. There were important pieces of information that the substitute examiner could not testify to that were necessary facts to establish time of death, including: the arrival time of the body (Tr. 912, Ab. 43), and whether any police reports accompanied the body to the crime lab. (Tr. 919-920, Ab. 49). Not only could he not testify to these important facts, Dr. Sturner did not even have the autopsy report when he testified . (Tr. 920, Ab. 50).

The fact that the analyst who did not perform the autopsy was allowed to testify over Marta's proper objection, combined with his inability to testify to vital facts, irreparably harmed Marta's right to a fair trial. For the Foregoing reasons, Appellant respectfully requests this Court reverse his conviction.

## CERTIFICATE OF SERVICE

I, Denny Hyslip, Attorney for Defendant, state that I have on this 31st day of July, 1998, served two copies of the Abstract and Brief upon the Appellee by placing them in the care of Federal Express, addressed to Honorable Winston Bryant, Attorney General's Office, 323 Center Street, 200 Tower Building, Suite 200, Little Rock, Arkansas, Honorable William Storey, Washington County Courthouse, 280 North College, Suite 401, Fayetteville, Arkansas 72701, and Mr. Terry Jones, Washington County Prosecutor's Office, 280 North College, Suite 301, Fayetteville, Arkansas 72701.

Denny Hyslip
Attorney at Law
ID# 77068
280 N. College, Suite 100
Fayetteville, AR 72701

CR 98-105

IN THE ARKANSAS SUPREME COURT

1998 DEC -1  PM 4: 16

YITZHAK ABBA MARTA                          APPELLANT  EN, CLERK

    V.                          NO. CR 98-105

STATE OF ARKANSAS                           APPELLEE

OFFICE COPY

AN APPEAL FROM THE
WASHINGTON COUNTY CIRCUIT COURT

THE HONORABLE WILLIAM A. STOREY
CIRCUIT JUDGE

REPLY BRIEF FOR APPELLANT

DENNY HYSLIP
PUBLIC DEFENDER
ID #77068
280 N. COLLEGE, SUITE 100
FAYETTEVILLE, AR  72701
(501)  444-1595



FILED

DEC 01 1998

LESLIE W. STEEN
CLERK

I.

**THE TESTIMONY CITED BY THE APPELLEE
IN ITS RESPONSE DOES NOT RISE TO THE
LEVEL OF SUBSTANTIAL EVIDENCE AND
THEREFORE THIS COURT SHOULD OVERRULE
THE TRIAL JUDGE'S DENIAL OF APPELLANT'S
DIRECTED VERDICT MOTION.**

The Appellee's response places significant reliance on Peeler v. State, 326 Ark. 423, 932 S.W.2d 312 (1996) in which the trial court denied the defendant's Motion for a Directed Verdict and this Court upheld that trial court's ruling. This Court found that the testimony of the defendant's mother and uncle independently established the crime and tended to connect the accused with its commission. Id. at 428.

There are significant distinguishing characteristics between Peeler and the facts of this case. First, in Peeler, the defendant's mother testified that he told her he "had taken the boy out to the swamp out to Scott and did him in." Id. at 427. The defendant's uncle then testified the defendant "told him he killed somebody named Chris because that person had raped Amy." Id. at 427. The testimony of these close familial witnesses contained direct inculpatory statements by the defendant

1.

that he had committed the murder, quite different than the character of the testimony in Appellant's trial.  The witness testimony cited by the Appellee including two individuals incarcerated with the Appellant, both giving inconsistent and conflicting testimony, the other, statements exculpatory on their face made to the victim's mother.

In their response, the Appellee cites the testimony of three witnesses as providing the necessary substantial corroborating evidence to the accomplice's testimony to uphold the trial court's denial of a directed verdict motion.  Though Appellee contends their testimony was substantial corroborating evidence, analysis of the testimony of these witnesses clearly reveals what could hardly be characterized as substantial corroborating evidence necessary to deny a directed verdict motion.

The Appellee's brief fails to take into account the incredible inconsistency of Coleman's version of the Appellant's alleged inculpatory statements.  Coleman's statement is inconsistent with the very facts presented by the State witnesses.  Those inconsistencies included the nightclub the victim, accomplice, and Appellant met at that night (Tr. 1101, 929, Ab. 123, 60) and that

2.

Appellant hit the victim with a baseball bat. Both testimonial and scientific evidence completely contradict the witnesses testimony. (Tr. 1102, Ab. 123, 45). The Appellee's contention that Appellant and Coleman "spent time together" in jail also ignores the fact that they were actually in jail together for less than 24 hours. (Tr. 1100-1101, Ab. 125). Coleman's testimony loses further credibility when Galbraith, the other State witness the Appellee relies on in its response, and who was incarcerated with the appellant for months, testified that the Appellant "kept his mouth shut". (Tr. 1065, Ab. 113).

The Appellee's reliance on Galbraith's testimony also overlooks a critical part of his testimony. Galbraith, the State's own witness, denied that the Appellant ever said anything to him about the killing of the victim. (Tr. 1060, 1069, Ab. 110). The Appellee's response also contends that the Appellant told Galbraith that the accomplice went outside to get the crowbar. A close reading of the transcript reveals that the Appellant never told Galbraith anyone went and got anything. (Tr. 1068, Ab. 114). Also, Galbraith's testimony is liberally sprinkled throughout with

3.

equivocations including: "something like that" (Tr., Ab. 111), "I think he said" (Tr. 112, Ab. 112), and when answering a prosecution question, "Isn't that what I said?" (Tr. 112, Ab. 112).

Finally, when the statements by Appellant to the victim's mother are closely examined, they can not be characterized as substantial evidence. His statement to the victim's mother that her son was killed for his sexual preference, and that he was sorry and did not do it (Tr. 979-976, Ab. 75), were on their face exculpatory. They contain no admission by the Appellant that he was in any way involved in the murder and are just as consistent with innocence as guilt.

Directed-verdict motions are challenges to the sufficiency of the evidence. <u>Peeler v. State</u>, 326 Ark. 423, 427, 932 S.W.2d 312 (1996). "The test is whether the verdict is supported by substantial evidence, direct or circumstantial." <u>Id</u>. Substantial evidence compels a conclusion with reasonable certainty beyond mere speculation or conjecture. <u>Id</u>.

In this case, the testimony of the victim's mother was exculpatory on its face and required speculation and conjecture to arrive at any conclusion as to its meaning

4.

and can not be characterized as substantial.  Galbraith's testimony included a denial that the Appellant *ever said anything to him about the killing* and was filled with equivocations. (emphasis added).  The only direct testimonial evidence is that of Coleman, a person the Appellant was incarcerated with for less that 24 hours and had just met. Coleman's testimony was totally inconsistent with the State's own forensic and testimonial evidence.  Unlike <u>Peeler</u>, where the testimony came from close family members and included direct admissions of culpability, the testimony cited by the Appellee as substantial evidence clearly requires speculation and conjecture to compel any conclusion and this Court should overrule the trial courts failure to grant the Appellant's Motion for Directed Verdict.

For the foregoing reasons the Appellant prays that this Court reverse and dismiss his conviction.

5.

II.


**THE APPELLANT PROPERLY PRESERVED HIS RIGHT OF CONFRONTATION AND IT WAS THE STATE'S BURDEN TO EITHER PRODUCE THE APPROPRIATE EXAMINER OR REQUEST A CONTINUANCE.**


The Appellee, by contending that Appellant failed to give the required 10 days notice contained within Ark. Code Ann. § 12-12-313(d)(2) overlooks the simple fact that the subpoena's were properly file marked, placed in the case file, and served on Dr. Kokis.   There would seem to be no more effective and emphatic manner for the Appellant to provide notice to the State in such a case than the issuance of three subpoenas. (Tr. 212, 228, 224).    Nothing contained within the notice provision of Ark. Code Ann. § 12-12-313 mandates a specific type of notice.   Surely properly file marked subpoenas, added to the case file months before the trial and properly served on Dr. Kokis, provided the State with absolute notice of intent to cross-examine Dr. Kokis.

Though the Appellee contends that <u>Hendrix v. State</u>, 40 Ark. App. 52, 842 S.W.2d 443 (1992) was limited to its facts in <u>Dodson</u>, "there can be no reasonable basis for enforcing

6.

such a rule where it is not possible for the accused to comply. Id. at 57. In Dodson the Appellant was charged with two controlled substances offenses, and the court said he should have been aware that a chemist would testify, was willing to proceed without proper preparation, and had no one to blame but himself. Dodson v. State, 326 Ark. 637, 646-647, 934 S.W.2d 198 (1996). In this case, the Appellant had no way of knowing that the State would call any person other than the one subpoenaed, and the defendant in this case was just as surprised as the defendant in Hendrix. The Appellant in this case expected the medical examiner subpoenaed to testify. Appellant was prepared to cross-examine the appropriate analyst. It is the State's burden to either produce the appropriate examiner or request a continuance. Dodson v. State, 326 Ark. at 647-648. (emphasis added).

Not only did the Appellant not make "simple bare assertions" that cross-examination would have availed him anything in his argument, the specifics of those things that could have provided him important evidence were contained within the Appellant's renewed objection during Dr. Kokis's cross-examination. (Tr. 926-928, Ab. 53).

7.

Contained within Appellant's argument are specific references to the critical information necessary to an examiner's determination of the time of death. Dr. Sturner's testimony lacked vital information which would have availed Appellant and the trial court with pertinent evidence, including, the arrival time of the body at the crime lab (Tr. 912, Ab. 43) and whether police reports accompanied the body. (Tr. 912, Ab. 53). Also missing from Dr. Sturner's testimony was important testimony on the ethyl alcohol in the victim's bloodstream and how the loss of cross-examination hurt him. (Tr. 926-928, Ab. 53) All of this evidence was necessary to establish a specific time of death, critical information when the Appellant testified that he heard the accomplice leave his home shortly after Appellant went to bed that morning. (Tr. 1255-1256, Ab. 217-218.)

"This court had previously concluded that *it is the state's burden* to produce the chemist or to obtain a continuance when the state has caused the defendant to be unable to comply with the statute's ten-day-notice prerequisite. Lockhart v. State, 314 Ark. 394, 862 S.W.2d 265 (1993)." Dodson v. State, 326 Ark. at 646-647. (emphasis added). In this case, the state's witness Dr. Kokis, even though subpoenaed, did not present himself at trial to be

8.

cross-examined.   The Appellant was surprised, objected, and asserted his right of cross-examination.  Appellant preserved his right of confrontation by a timely  objection specifically detailing the unascertainable information and the prejudice he suffered by this inability to cross-examine.  It would seem at odds with justice and fairness for the Appellant to have preserved his broader constitutional right of confrontation, and then lose his specific right of confrontation guaranteed by Arkansas Statute when it is the State's burden to either produce the proper analyst or request a continuance.

For the foregoing reasons, Appellant prays that this Court reverse and remand his conviction.

9.

## CERTIFICATE OF SERVICE

I, Denny Hyslip, Attorney for Appellant, state that I have on this _____ day of November, 1998, served two (2) copies of this Brief upon the Appellee by placing them in the care of Federal Express, addressed to Honorable Winston Bryant, Attorney General's Office, 323 Center Street, 200 Tower Building, Suite 200, Little Rock, Arkansas, Hon. William A. Storey, Washington County Circuit Judge, 280 N. College, Suite 401, Fayetteville, Arkansas 72701 and Mr. Terry Jones, Washington County Prosecuting Attorney, 280 N. College, Suite 301, Fayetteville, Arkansas 72701.

Denny Hyslip
Attorney at Law
ID# 77068
280 N. College, Suite 100
Fayetteville, AR  72701

10.