# CR 98-105

### IN THE ARKANSAS SUPREME COURT

**YITZHAK ABBA MARTA**                                    **APPELLANT**

**V.**                              **NO. CR 98-105**

**STATE OF ARKANSAS**                                    **APPELLEE**

### AN APPEAL FROM THE
### WASHINGTON COUNTY CIRCUIT COURT

### THE HONORABLE WILLIAM A. STOREY
### CIRCUIT JUDGE

### SUPPLEMENTAL ABSTRACT AND
### BRIEF OF APPELLEE

**WINSTON BRYANT**
Attorney General

BY:   **MAC GOLDEN**
Arkansas Bar #97156
Assistant Attorney General
200 Catlett-Prien Tower
323 Center Street
Little Rock, Arkansas  72201
(501) 682-1789

**ATTORNEYS FOR APPELLEE**

IN THE ARKANSAS COURT OF APPEALS

YITZHAK ABBA MARTA                                          APPELLANT

V.                              NO. CR 98-105

STATE OF ARKANSAS                                            APPELLEE

AN APPEAL FROM THE
WASHINGTON COUNTY CIRCUIT COURT

THE HONORABLE WILLIAM A. STOREY
CIRCUIT JUDGE

SUPPLEMENTAL ABSTRACT AND
BRIEF OF APPELLEE

# <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF CONTENTS ................................................................................. i

POINTS TO BE RELIED UPON ..................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

SUPPLEMENTAL ABSTRACT ...................................................................SA-1

    Transcript of Jury Trial (July 9-11, 1997).....................................SA-1
      Dr. William Sturner, Direct Examination ...................................SA-1
      Sergio Elizade, Direct Examination ............................................SA-2
      Leovas Walker, Direct Examination ...........................................SA-4
      Harold Galbraith, Direct Examination ......................................SA-7
      Rochelle Marta, Cross-Examination..........................................SA-14
      Detective Anthony Smith, Direct Examination ........................SA-14
      Detective Bill Baskin, Direct Examination...............................SA-15
      Mark Killion, Cross-Examination .............................................SA-17
      Yitzhak Marta, Direct & Redirect Examination.......................SA-18

ARGUMENT .....................................................................................................1

RULE 4-3(H) CERTIFICATION ...................................................................10

CONCLUSION.................................................................................................10

## POINTS TO BE RELIED UPON

### I.

**THE CIRCUIT COURT DID NOT ERR IN DENYING
THE APPELLANT'S MOTION FOR DIRECTED VERDICT
BECAUSE SUBSTANTIAL EVIDENCE CORROBORATED
THE TESTIMONY OF HIS ACCOMPLICE**

### II.

**THE CIRCUIT COURT DID NOT DENY THE APPELLANT
A FAIR TRIAL OR ERR IN DENYING THE
APPELLANT'S MOTION FOR A MISTRIAL**

### III.

**THE ISSUE IS NOT PRESERVED FOR REVIEW, OR, IN
THE ALTERNATIVE, THE CIRCUIT COURT DID NOT DENY
THE APPELLANT HIS RIGHT TO CONFRONT WITNESSES
AGAINST HIM WHEN IT ALLOWED THE SUPERVISING
MEDICAL EXAMINER TO TESTIFY ABOUT THE FINDINGS
OF THE AUTOPSY CONDUCTED ON THE VICTIM**

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Ashe v. State*, 57 Ark. App. 99, 110, 942 S.W.2d 267, (1997) ............................. 8

*Brown v. State*, 35 Ark. App. 156, 159, 814 S.W.2d 918, 919-20 (1991) ........... 3

*Dodson v. State*, 326 Ark. at 647, 934 S.W.2d at 203 ................................... 9, 10

*Dulaney v. State*, 327 Ark. 30, 33, 937 S.W.2d 162, 164 (1997) .................... 7, 8

*Echols v. State*, 326 Ark. 917, 973, 936 S.W.2d 509, 538 (1996),
  *cert. denied, Echols v. Arkansas*, 117 S. Ct. 1853 (1997) ................................. 5

*Heard v. State*, 322 Ark. 553, 560, 910 S.W.2d 663, 667 (1995) ....................... 4

*Hendrix v. State*, 40 Ark. App. 52, 842 S.W.2d 443 (1992) ................................ 8

*Kimble v. State*, 331 Ark. 155, 159, 959 S.W.2d 43, 45 (1998) ......................... 4

*MacKintrush v. State*, 334 Ark. 390, __ S.W.2d __ (1998) ................................. 4

*Peeler v. State*, 326 Ark. 423, 427, 932 S.W.2d 312, 314 (1996) .................... 1, 2

*Thomas v. State*, 330 Ark. 442, 449, 954 S.W.2d 255, 258 (1997) .................... 2

*Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997) .................... 2, 3

**Rules**

Arkansas Supreme Court Rule 4-3(h) .............................................................. 10

Rule 608 of the Arkansas Rules of Evidence .................................................... 5

**Statutes**

Ark. Code Ann. § 12-12-313 (Repl. 1995) ..................................................... 7, 9

Ark. Code Ann. § 12-12-313(a) ........................................................................ 9

Ark. Code Ann. § 12-12-313(c) ........................................................................ 9

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

**Statutes (Cont'd)**                                                    **Page**

Ark. Code Ann. § 12-12-313(d)(2) ................................................................... 8, 9

Ark. Code Ann. § 5-2-403(a)(2) (Repl. 1997) ...................................................... 2

Ark. Code Ann. § 5-10-101(a)(1) & (4) (Repl. 1997) .......................................... 1

Ark. Code Ann. § 16-89-111(e)(1) (1987) ............................................................ 2

## SUPPLEMENTAL ABSTRACT OF APPELLEE

### Transcript of Jury Trial
### (July 9-11, 1997)

[ABSTRACTOR'S NOTE:  The State was represented by Prosecuting Attorney Bruce Rhodes, and Appellant was represented by Mr. Denny Hyslip.]

### Dr. WILLIAM STURNER
### Direct examination
### (R. at 905-907)

*Examination by MR. RHODES*:

MR. RHOADES:  Judge, at this time, I'd ask to introduce State's 8a through 8c, 8b, k, j, i, h, l, m, e, and d.

THE COURT:  Any objection?  (T. 905)

MR. HYSLIP:   Your Honor, if I might take a moment to look at them. (Examines proposed exhibits.)  Your Honor, if I might approach briefly.

THE COURT:  You may.

(Conference at the bench.)

MR. HYSLIP:  Your Honor, I would object.  The objection being that they are enlarged and they are in color and it's inflammatory.

MR. RHOADES:  They're not actually enlarged, Judge.  To my knowledge, this is --

THE COURT:  They're five-by-sevens?

MR. RHOADES:  Yes, sir.  This is the size that they come in.  I mean, I don't think they've been enlarged.  The purpose from the State's viewpoint of the color is the fact that the medical examiner has to testify as to the status of the injury, the

SA-1

age of the injury, the time of death, and all those are much more illustrative to the jury in color.

THE COURT:  I understand your objection, counsel.  Again, I think probative value clearly outweighs the prejudicial effect of these photographs.  The jury is entitled to see these wounds, see the location, nature of the wound.  The witness has testified to the age of some of these injuries and I think all of this will aid the jury in understanding the physiology of these (T. 906) particular injuries and the condition of the victim.  So for those reasons, I'll overrule the objection and I'll admit State's Exhibits a through c, and -- or through -- I'm sorry, a through e, -- or k, j, i, h, l, m, over your objection.

MR. HYSLIP:  Thank you.

(STATE'S EXHIBIT NUMBER 8A, 8B, 8C, 8D, 8E, 8H, 8I, 8J, 8K, 8L, 8M, Photographs, introduced and received into evidence and appearing on the following 11 pages.)  (T. 907)

* * *

**SERGIO ELIZADE**
**Direct examination**
**(R. at 963-64)**

THE COURT:  Cross-examination?

MR. HYSLIP:  Your Honor, if I could approach.

(Conference at the bench.)

MR. HYSLIP:  Your Honor, I'd move for a mistrial.  I don't see any relevance to any of that testimony.  There's no testimony those rings were stolen.  There's no

testimony where those rings came from.  All it is is testimony about him having some rings that maybe he shouldn't have had.

THE COURT:  I've addressed the issue, now, Mr. Hyslip.  If the State doesn't tie that together, you go ahead and make your objection again and I'll exclude his testimony, but I assume the State intends to tie this --

MR. RHOADES:  I'm going to tie it in with two witnesses, Judge.  I might add that the reason that I did not tie it in better with this witness is because he suddenly lost his ability to speak English, but he didn't have that problem in the first trial or when he talked to the police officers and we can go very painstakingly slow and I'll be happy to do that if that's what the Court wants me to do and what Mr. Hyslip wants me to do and I'll pin it down just to the minute when he saw these rings, but it's going to take us about an hour.  (T. 963)

THE COURT:  I mean, we'll take as much time as need be, but what you're telling me, Mr. Rhoades, is you're going to tie this in with some relevant issue here today --

MR. RHOADES:  With two other witnesses, yes, sir.

THE COURT:  I'll, at this point, overrule your objection, counsel, but I'll entertain it again.

MR. HYSLIP:  Thank you.  (T. 964)

* * *

**<u>LEOVAS WALKER</u>**
**<u>Direct examination</u>**
**(R. at 969-70)**

[ABSTRACTOR'S NOTE:  During the direct examination of the victim's mother, the prosecution sought to enter into evidence a photograph of the victim.]

THE COURT:  Any objection:

MR. HYSLIP:  Yes, Your Honor, I don't know what relevance it has.

MR. RHOADES:  Your Honor, it has great relevance to the State.  I believe it is the State's responsibility to prove, first of all, that Mr. Walker (T. 969) was murdered and second of all, that, in fact, who the individual was.  This photograph is the only live photograph the State is asking to introduce.  Every other photograph will show Mr. Walker in a deceased state which is not the state in which he was at the time that the State alleges this defendant and Adam Blackford killed him.

THE COURT:  I think it's certainly relevant to these issues.  I'll overrule your objection and it will be admitted as State's Exhibit Number 1.  (T. 970)

\* \* \*

**(R. at 972-74)**

[ABSTRACTOR'S NOTE:   During direct examination of Leovas Walker, the prosecution sought to question her on statements made to her by the Appellant during a recess.]

MR. HYSLIP:  Objection, Your Honor, I don't see the relevance.

MR. RHOADES:   Relevance of the statements of the defendant in the courtroom to the victims, Judge?  I (T. 972) think it speaks for itself.

THE COURT:  Let me see counsel, here.

(Conference at the bench.)

THE COURT:  What do you anticipate this witness saying?

MR. RHOADES:  She's going to say that he -- something to the effect that he was not at fault in the killing of her son and that her son was killed because of his sexual preferences and I think that it's highly relevant.  I consider that incriminating.

THE COURT:  I think that's relevant and I'm going to permit it.

MR. RHOADES:  And I will, if the defense wishes me to, I can call a detective that overheard it.  I can call other people -- those people have stayed in the courtroom and I don't want to mislead, that they have stayed in the courtroom.

THE COURT:  I think that's right, counsel.

MR. HYSLIP:  Your Honor, again, I would object and I would also would object that I had no notice of this.  I didn't know that he made a statement.

THE COURT:  Apparently it just occurred a minute ago.

MR. RHOADES:  It happened either right before lunch or right after lunch.  I wasn't present when it (T. 973) happened.

THE COURT:  I was present when you told Mr. Hyslip that there was some conversation.

MR. HYSLIP:  I did know, Your Honor, that he had said something to them because I went back and cautioned him.  After I told the prosecutor, I went back and cautioned him not to have any more conversations with him and/or anyone else, so I was aware that he had said something, but I didn't know what it was.

THE COURT:   Do you want a few minutes to prepare in order to cross-examine this witness?

MR. HYSLIP:  Just five minutes, Judge, just to talk to my client about what he might have said.

THE COURT:  Alright, I'm going to give you that time.  I think this is a very critical issue.  I think you're entitled to some time to visit with him about it.

MR. HYSLIP:  Alright, sir.

(End of conference at the bench.)  (T. 974)

*   *   *

**(R. at 979)**

[ABSTRACTOR'S NOTE:  After the testimony of Leovas Walker, the prosecution sought to call Detective Tuberville.]

(Conference at the bench.)

MR. RHOADES:  It's my impression that Mr. Hyslip impugned the integrity or the credibility of Ms. Walker by his questioning her about the statement and because of that, I intend to call Detective Tuberville who also heard the statement. That's what my intention is, Judge.  Two problems with that.  One is, of course, that because it may seem as culmative, the other is because he has been in the courtroom, but I didn't set this deal up.

MR. HYSLIP:  Your Honor, I wasn't questioning her integrity.  I was simply inquiring as to exactly what was said.

THE COURT:   As I view the testimony, whether or not I think it's cumulative, I'm not going to permit it.

SA-6

MR. RHOADES:  At this stage, Judge?

THE COURT:  At this time.  It may be something for rebuttal.

(End of conference at the bench.)  (T. 979)

\*  \*  \*

### HAROLD GALBRAITH
### Cross-examination
#### (R. at 1066-67)

[ABSTRACTOR'S NOTE:  During cross-examination of Harold Galbraith, a jail-mate of the Appellant's, the prosecution objected to the Appellant's questioning as improper impeachment of the accomplice as a matter of law, Adam Blackford.]

MR. RHOADES:  Judge, I'm sorry.  I'm not sure this is proper cross-examination for two reasons; A) it's outside the scope, but be that as it may, he could (T. 1066) recall him as his own witness, but the other reason is that what Mr. Hyslip asked Mr. Blackford about, i.e., I assume this is impeachment.  He asked Mr. Blackford about whether he said anything about that to Sean Case.  He never asked if he ever told Mr. Galbraith that.  If this would be impeachment of Mr. Blackford through Mr. Galbraith, then Mr. Hyslip never asked Mr. Blackford if he told Mr. Galbraith that.  He asked him if he told Sean Case that, therefore, would not be proper impeachment which would not be proper testimony from this witness.

THE COURT:  I understand your point.  What's your response, counsel?

MR. HYSLIP:  I'm not sure I understand his point.

THE COURT:  I'll sustain the objection.  I think it's an appropriate objection. (T. 1067)

\*   \*   \*

**(R. at 1070-77)**

[ABSTRACTOR'S NOTE:  Between witnesses, the prosecution informed the circuit court that the Appellant's wife, a State witness, could not testify because of illness. The State informed the court of its intent to introduce her taped statement because of her unavailability.]

MR. RHOADES:  Your Honor, Rochelle Marta was listed as a State's witness. We had a subpoena out for her.  She was served with that subpoena Tuesday.  She was expected to testify yesterday evening, late.

THE COURT:  This is the wife of the defendant?

MR. RHOADES:  Yes, sir.  She was expected to testify yesterday evening late, however, she got sick and was not able to testify yesterday evening.  We called the EMTs.  They came up, they looked at her, (T. 1070) they decided that she was basically hyperventilating, low blood sugar from not eating, and generally just not feeling well.  They recommended she go home and get some bedrest.  She did that. This morning, Investigator Bill Baskin of the State Police picked her up or went to pick her up.  She was worse.  He took her to the hospital.  She is at the hospital now.  They are doing x-rays, they have given her valium.  She apparently is spitting up blood and is basically just physically incapable of being present.  They don't really know what the problem is.  She apparently has low blood sugar, she started her menstrual cycle, is constipated, has an upset stomach, is dizzy.  Just basically is not capable of walking or talking.  The privilege does not apply to her, Judge, because she is not going to, first of all, testify about confidential communications because the two things she's going to testify about are her own observations, not

statements by the defendant, and statements the defendant made or items he showed her in the presence of other people.  Therefore, they would not be deemed confidential.  Under the privilege, there's a couple of court rules -- I mean, cases that -- or a case that I can cite for the Court as soon as I dig it out that makes it clear that she would not be, on those items, would not be (T. 1071) privileged.  We took an under oath statement from her Tuesday afternoon and provided that to Mr. Hyslip on Wednesday morning or Wednesday at the noon break.  What I propose to do if the Court were to declare her unavailable, would be to put on Detective Smith to testify to those two items.  I do not believe, Judge –-

THE COURT:  Testify to the contents of the statement?

MR. RHOADES:  Yes, sir.  Yes, sir.  I do not believe that the confrontation clause applies because she is not accusing him of criminal activity.  She's merely talking about her observations.  She knows nothing about the crime or the commission of the crime or anything else.

THE COURT:  If called to testify, what, in essence, would she say?

MR. RHOADES:  She would say that Mr. Marta and Mr. Blackford arrived home in the early morning hours, approximately -- Judge, I don't have the tape in front of me, but I believe she'll say that they arrived home at approximately 4:00 in the morning, that he then got into the shower, that --

THE COURT:  "He," meaning the defendant.

MR. RHOADES:  Mr. Marta got into the shower.  After getting out of the shower, Mr. Marta went back (T. 1072) and was in Mr. Blackford's room and she

could hear a conversation they were having and laughter.  That this went on until approximately 6:00 when he got back in bed.  Between the time that he got home and got back in bed, she opened his dresser drawer and saw two rings that she had never seen before.  And then that he was in bed with her  until about 7:00 that morning.   That she didn't hear anybody leave, specifically, Mr. Blackford or Mr. Marta.  When she got up at 7:00, Mr. Blackford was still there, Mr. Marta was there.  When she left at 9:00, they were both there.  And she would say that either that day or the next day, I believe the next day on Sunday, Mr. Marta showed up at her work place at work and showed her the same two rings she had seen earlier in the presence of Mr. Blackford and in the presence of another waitress and I think another individual.  She would testify that later on that day, that day or the next day, he came back and showed her the same rings, what she thought to be the same rings, but were now in a very burned state.  The settings were gone.  I would not elicit from her or from her stand-in statements that he made about that simply because of the fact, although we don't believe they're confidential communications, but they were communications, so, therefore, they would not be actual (T. 1073) statements of the defendant.

THE COURT:  What's the defendant's position?

MR. HYSLIP:  Your Honor, certainly we would object to that.  First of all, I would point out, as Mr. Rhoades did, that at the noon recess yesterday after voir dire, he handed me a note which I would like to make a copy to submit as part of the record informing me that there was a tape, that he had taped Mrs. Marta on

July the 8th, '97, sometime in the early evening hours.  I was then handed that tape which I attempted to listen to during the noon hour yesterday.  The only problem was I think it was a little more than an hour and I didn't get to hear the tape in its entirety.  Secondly, I believe that Mrs. Marta had given a statement early on in the investigation of this case last November that is somewhat different from what I heard on the tape yesterday and I would not have the opportunity to cross-examine her in that regard.

MR. RHOADES:  With respect to just that point, Judge, we asked Ms. Marta about that.  It's on the tape.  I don't dispute anything Mr. Hyslip said.  It's on the tape.  She candidly admits to either not being fully truthful or lying.  I don't remember if she used the word lying or not, but she admits to that and that would be something that Detective Smith would, of (T. 1074) course, be available to say that she admitted to lying to the police the first time.  I don't know if she said the word lying.  We questioned her about it and she admitted to being not fully truthful with the police.  I don't remember exactly the words she used.

MR. HYSLIP:  Your Honor, I don't believe I could effectively cross-examine Mr. Smith who is a detective with the Fayetteville Police Department.

THE COURT:  I understand the problem, I truly do.

MR. RHOADES:  Judge, I would much prefer to have Ms. Marta here also, but I can't.

THE COURT:  I understand that.  My inclination -- of course, you have this prior statement that she made which I assume is under oath and that also would be admissible.

MR. RHOADES:  The statement to the police?

THE COURT:  Yes.

MR. RHOADES:  It was not under oath, Judge, but I would stipulate to its admissibility.

THE COURT:  I think you certainly would be able to get that into evidence. It appears to me, as a matter of law, she's unavailable.  I'm inclined to permit the State to use the statement that Mr. Rhoades is referring to with the understanding that you'll, of (T. 1075) course, have the opportunity, whenever you so choose, to put the earlier statement, the prior, what appears to be a somewhat inconsistent statement into evidence.

MR. RHOADES:  Would the Court prefer or Mr. Hyslip, I will either have Detective Smith testify or I could play the tape after Detective Smith lays the foundation, however the Court want to do it.

THE COURT:  You say it's an hour-long tape?

MR. RHOADES:  Mr. Hyslip asked me that when I handed him the tape and I don't know, Judge.  I'll take his word for it it's an hour.

MR. HYSLIP:  I attempted to listen to it during the noon hour, Your Honor, and I didn't get finished.

THE COURT:  I assume you got to listen to it after we quit last night.

SA-12

MR. HYSLIP:  Your Honor, my investigator continued to listen to it after I left at noon yesterday and he said it was pretty much the same of what I already heard.

MR. RHOADES:  To make a point, Judge, obviously, Detective Smith would be a shorter witness, but I do not want to -- I mean, if Mr. Hyslip wants the tape introduced, either introduced to allow the jury to listen to it if they want to or play the entire tape, it's however the Court wants to do it or Mr. Hyslip (T. 1076) wants to do it.  I understand it works a hardship on everybody, but I don't have any control over it.  Under the rules, I think technically the Court can allow it done either way, it's just however the Judge wants to do it.

THE COURT:  I'm waiting to hear from Mr. Hyslip.

MR. RHOADES:  I'll shut up then.

THE COURT:  I'm not suggesting you should, I'm just --

MR. HYSLIP:  I'm thinking, Your Honor.  I was unaware of all of this and I'm having to think just a little bit.

THE COURT:  I don't want to catch you by surprise.  I'll tell you what we're going to do.  Let's go ahead with some other witnesses and we'll address this problem.  Hopefully the State can be finished with everybody else by noon.  Now, maybe that's wishful thinking, but I'll give you an opportunity, Mr. Hyslip, to do whatever you need to do between now and our noon break and then we'll proceed.

MR. HYSLIP:  Thank you.

THE COURT:  Let's have some other witnesses.  (T. 1077)

SA-13

\* \* \*

## ROCHELLE MARTA
### Cross-examination
### (R. at 1095)

[ABSTRACTOR'S NOTE:   During cross-examination of his wife, the Appellant sought to question her on where she went when she briefly left him over marital problems.]

MR. RHOADES:  Objection, Judge.  It's irrelevant where she's been and I'd

like to keep it that way.

THE COURT:  I'll sustain the objection.  It's really outside the scope of direct

examination.

\* \* \*

## DETECTIVE ANTHONY SMITH
### Direct examination
### (R. at 1128-29)

[ABSTRACTOR'S NOTE:   During the direct examination of an investigating detective, the State sought to enter into evidence remnants of a television found in a creek behind the Appellant's home.]

MR. RHOADES:  Judge, at this time I'd ask to introduce these pieces for

whatever weight they might be as State's Exhibit 52.

THE COURT:  Any objection?

MR. HYSLIP:  Your Honor, I would object to that.  I'm not sure what it is

pieces to.

MR. RHOADES:  Basically, that's all I can say, Judge.

THE COURT:  Is the objection to foundation or relevance?

MR. HYSLIP:  Relevance, Your Honor.

THE COURT:  The witness has testified that he (T. 1128) considers these three pieces of a television set taken out of this creek, Brush Creek, I believe.  I think it does have some relevance in terms of the issues of this trial.  I think whatever weight to be given to this testimony and this evidence is a question for the jury, so I'll overrule your objection.

MR. HYSLIP:  Thank you, Your Honor.  (T. 1129)

\* \* \*

**(R. at 1130)**

MR. RHOADES:  At this time, Judge, I'd ask to introduce State's Exhibit Number 53.

MR. HYSLIP:  Same objection, Your Honor.

THE COURT:  Overruled.  Again, I think this simply goes to the issues, what weight the jury chooses to give to these items.  I'll receive State's Exhibit 53 over the defendant's objection.  (T. 1130)

\* \* \*

**DETECTIVE BILL BASKIN**
**Direct examination**
**(R. at 1153-55)**

[ABSTRACTOR'S NOTE:  During the direct examination of Bill Baskin, the State sought to utilize portions of wall removed from the victim's house which had been splattered with blood and written on with blood.]

MR. RHOADES:  Judge, at this time, I'd ask that the deputies ask the detectives to bring those items in.  They should be right outside the door.

MR. HYSLIP:  May we approach, first, Your Honor.

THE COURT:  You may.

SA-15

(Conference at the bench.)

THE COURT:  Any objection to this?

MR. HYSLIP:  Yes, sir.  Your Honor, we would object to these matters just mentioned being brought in.  I don't see that they're going to aid the trier of fact.  I don't know that Mr. Baskin has indicated to us just how they're going to do that.  They're obviously extremely inflammatory and prejudicial and the probative effects -- or the prejudicial effect is going to outweigh the probative effect I might add.  Again, I've seen those items at a previous trial and I just don't see the purpose of bringing them in.  He's examined them, he's looked at them from these photographs of them.  There's pictures of them.  I think he can testify equally as well from that.

MR. RHOADES:  Judge, it's from the crime scene.  (T. 1153)  It gives the jury a much better idea of what these -- the dimensions are or what the sizes are, what the things actually look like.  The photographs are a nice replica, but this is the real thing.   I'm not trying to introduce these items, I just want to use them for demonstration purposes.  They will not have them during deliberation if we get to that stage.  But this is merely for demonstration.  I think Investigator Baskin made it very clear that he could better illustrate his opinions and views with these actual items.  I think it's very helpful.  Yes, obviously, it's prejudicial, but the issue is whether or not the probative value is worthwhile to the jury, to the trier of fact.

THE COURT:  I guess, to some extent the prejudicial -– obviously, I've seen them before, too, in the earlier trial, but I think, obviously, the amount of force used by the perpetrator of this crime is an issue.  It is a part of the State's proof.  I think

that for the jury to properly understand this, I think they should be entitled to some of these items, the evidence in person.  I think that's what the State is wanting to do and I just don't see that it's that prejudicial.  I mean, they're obviously -– with anything that's introduced, it's to some degree prejudicial, but I don't see that this will necessarily (T. 1154) inflame the jury.  They've seen photographs of it.  They've seen the video of it.  And these items here, of and in themselves, are not particularly inflammatory.  I think it will, as I understand what the State is proposing to do, help illustrate the force with which the victim was struck.  For those reasons, I'm going to permit it.

    MR. HYSLIP:  Note our exception, Your Honor.

    (End of conference at the bench.)  (T. 1155)

*  *  *

**MARK KILLION**
**Cross-examination**
**(R. at 1208-09)**

    MR. RHOADES:  Mr. Killion, what's the tattoo on your elbow mean?  The spider tattoo?

    MR. KILLION:  It stands for how I've done time.

    MR. RHOADES:  Doesn't it actually have some gang implications about somebody you killed?

    MR. KILLION:  No, it doesn't.

    MR. HYSLIP:  Objection, Your Honor, I don't see the relevance to that.  It's beyond the scope of direct.

SA-17

MR. RHOADES:   The relevance, Judge, is the fact that if I'm allowed to continue, I'll show the relevance of it because it goes to specifically his bias.  (T. 1208)

THE COURT:   It's an issue of credibility and I've ruled favorably in that respect for the defendant, so it's the State's turn.  Overruled.  (T. 1209)

\* \* \*

### YITZHAK MARTA
### Direct examination
### (R. at 1251)

MR. HYSLIP:  What made you do that?

MR. MARTA:  Well, Blackford admitted to -– Leonard Wages came and told me what Blackford was afraid of and he mentioned that --

MR. RHOADES:  Objection, Judge.  Complete hearsay.

THE COURT:  Sustained.  (T. 1251)

\* \* \*

### Redirect examination
### (R. at 1285)

MR. HYSLIP:  -- a blond-headed lady and a bearded man and you told Officer Crews that those two people were there?

MR. MARTA:  That's correct, sir.

MR. HYSLIP:  Do you know whether or not Adam Blackford told Gary Crews that?

MR. MARTA:  Yes, he did, sir.

MR. RHOADES:  Objection, hearsay.

THE COURT:  Sustained. (T. 1285)

## ARGUMENT

The Appellant stands convicted of capital murder.  (R. at 282)  He received a sentence of life imprisonment without parole.  His appeal is without merit.

### I.

### THE CIRCUIT COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE SUBSTANTIAL EVIDENCE CORROBORATED THE TESTIMONY OF HIS ACCOMPLICE.

Adam Blackford, the accomplice of the Appellant as a matter of law, testified that he and the Appellant murdered the victim, Alan Walker, and stole personal property from his residence.  (R. at 1007, 1011-20)  Capital murder occurs when one or more persons cause the death of any person under circumstances manifesting extreme indifference to the value of human life during the course of, or in furtherance of, a robbery or burglary, or, when one causes the death of any person with the premeditated and deliberated purpose of causing the death of another. Ark. Code Ann. § 5-10-101(a)(1) & (4) (Repl. 1997).   On appeal, the Appellant requests a reversal and dismissal of his conviction for capital murder because he contends that the circuit court erred in denying his motion for directed verdict based on a failure to produce sufficient evidence corroborating the testimony of his accomplice.  As discussed below, the circuit court properly denied the Appellant's motion because the State presented sufficient corroborating evidence.

Directed-verdict motions are challenges to the sufficiency of the evidence. *Peeler v. State*, 326 Ark. 423, 427, 932 S.W.2d 312, 314 (1996).  "The test is whether the verdict is supported by substantial evidence, direct or circumstantial."  *Id.*

Substantial evidence compels a conclusion with reasonable certainty beyond mere suspicion or conjecture. *See id*. This Court only reviews the evidence supporting the verdict and does so in a light most favorable to the Appellee. *See Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997).

A person is an accomplice to a crime if he aids, agrees to aid, or attempts to aid another person in planning or committing it. Ark. Code Ann. § 5-2-403(a)(2) (Repl. 1997). "When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both." *Thomas v. State*, 330 Ark. 442, 449, 954 S.W.2d 255, 258 (1997).

A person cannot be convicted upon the testimony of an accomplice absent corroborating evidence tending to connect him to the crime. Ark. Code Ann. § 16-89-111(e)(1) (1987). "The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." *Id*. The test is whether, "if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission." *Peeler*, 326 Ark. at 428, 932 S.W.2d at 314. "Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction." *Id*.

The primary evidence corroborating the testimony of the Appellant's accomplice, Adam Blackford, is the testimony of Dana Coleman. Mr. Coleman testified that he spent time in jail with the Appellant. While there, the Appellant told him that he was in jail for capital murder because he and a friend left a bar and

went home with a transvestite, where the Appellant "slugged" the transvestite and his friend hit the transvestite with a bat. (R. at 1100-02) Mr. Coleman's testimony independently establishes that the Appellant aided Blackford in the murder of Alan Walker, a known cross-dresser, who was killed by strangulation and multiple blows to the head by a blunt object. (R. at 872, 907, 910-11, 934-35, 944-45) The testimony of Dana Coleman constitutes substantial corroborating evidence of the testimony of the Appellant's accomplice.

While the Appellant considers "the viability of Coleman's testimony[,]" to be in serious doubt, it is the province of the jury, not this Court, to weigh the evidence and pass on the credibility of witnesses. *Brown v. State*, 35 Ark. App. 156, 159, 814 S.W.2d 918, 919-20 (1991). "Any conflicts and inconsistencies in the evidence were for the jury to resolve as factfinder, and not for the trial court to resolve on a directed-verdict motion." *Williams v. State*, 325 Ark. 432, 438, 930 S.W.2d 297, 300 (1996).

Moreover, other evidence tends to connect the Appellant with the murder of Alan Walker. Harold Galbraith, another jailmate of the Appellant, stated that the Appellant told him that the victim had it coming to him because he was "queer," and that whoever did it were heroes. Mr. Galbraith further testified that the Appellant told Blackford that he should have covered his tracks "like I covered my tracks." The Appellant also told Mr. Galbraith that Blackford went outside to get a crowbar and then came back in the house. (R. at 1061-65, 1067-69)

Finally, the victim's mother, Leovas Walker, testified that as she was sitting in the courtroom during a recess, the Appellant turned to her and her family and said, "Are you the Walker family?  Your son was killed because of his sexual preferences."  The Appellant then stated that Blackford murdered her son and that he did not "do it."  He then said he was sorry.  (R. at 972-78)

The above evidence constitutes substantial corroborating evidence, that need not be substantial in an of itself to sustain a conviction, of the testimony of Adam Blackford that he and the Appellant murdered Alan Walker.  As such, the circuit court did not err in denying the Appellant's motion for directed verdict and in allowing the case to be presented to the jury.

## II.

### THE CIRCUIT COURT DID NOT DENY THE APPELLANT A FAIR TRIAL OR ERR IN DENYING THE APPELLANT'S MOTION FOR A MISTRIAL.

While "reference to a defendant's prior conviction during the guilt phase of a criminal trial results in some prejudice[,]" a mistrial "is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief."  *Kimble v. State*, 331 Ark. 155, 159, 959 S.W.2d 43, 45 (1998).  A mistrial should only be declared if "the error complained of is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected."  *Heard v. State*, 322 Ark. 553, 560, 910 S.W.2d 663, 667 (1995), *overruled on other grounds, MacKintrush v. State*, 334 Ark. 390, __ S.W.2d __ (1998).  An admonition cures any prejudice absent "patently

4

inflammatory" injustice mandating discontinuance of the trial. *Kimble*, 331 Ark. at 160, 959 S.W.2d at 45. The circuit court sits in the best position to determine a remark's effect on the jury, and its denial of a motion for mistrial will not be overturned absent an abuse of its wide discretion or manifest prejudice to the movant. *See Heard,* 322 Ark. at 560, 910 S.W.2d at 667.

Rule 608 of the Arkansas Rules of Evidence allows cross-examination on specific instances of conduct clearly probative of a witness' character for truthfulness. *See Echols v. State*, 326 Ark. 917, 973, 936 S.W.2d 509, 538 (1996), *cert. denied, Echols v. Arkansas*, 117 S. Ct. 1853 (1997). The test applicable to cross-examination is: "(1) whether the question is asked in good faith; (2) whether the probative value outweighs the possibility of unfair prejudice; (3) whether it relates to the witness's truthfulness." *Id*. at 974, 936 S.W.2d at 538.

During cross-examination, the Appellant admitted that he had been working under a false name and that he previously served one year in jail for a felony burglary conviction in another state. He then testified that he had been accused of holding persons at gunpoint and robbing them. He added, however, that he never held anyone at gunpoint and that he was only guilty of burglary. Thereafter, the following colloquy ensued:

> Q: In fact, you were originally charged with theft of property . . .
>
>   MR. HYSLIP [Appellant's counsel]:     Objection.
>
> Q: . . . aggravated robbery and aggravated assault.
>
> A: No, I was not.

The circuit court held that the prosecution could inquire as to the facts of the burglary conviction but could not inquire as to the original charges.  It denied the Appellant's subsequent motion for a mistrial, but admonished the jury to disregard the prosecutor's question relating to the alleged charges.  (R. at 1239, 1260-66)

Despite the Appellant's focus on the prosecution's good-faith basis for asking the question to which he objected, the issue in this case at bar is not whether the question was appropriate.  Indeed, the circuit court agreed with the Appellant that the question was inappropriate and sustained his objection.  The issue is whether or not the circuit court's admonition to the jury cured any possible prejudice that may have resulted to the Appellant.

While the Appellant contends otherwise, the prosecutor's question did not manifestly affect the fundamental fairness of his trial such that it mandated a mistrial.  The circuit court sat in the best position to judge the effect of the question upon the jury and it found that admonishing the jury cured any prejudice.  The Appellant fails to show that the question resulted in patently inflammatory injustice.  Indeed, when the Appellant answered the question in the negative and the prosecution was not allowed to offer any extrinsic evidence impeaching the Appellant's negative answer, the admonition and the negative answer cured any prejudice.  This Court should not topple the circuit court from its superior position for determining the affect of the question on the jury.  As such, the circuit court did not deny the Appellant a fair trial or abuse its discretion in denying the motion for mistrial.

## III.

**THE ISSUE IS NOT PRESERVED FOR REVIEW, OR, IN
THE ALTERNATIVE, THE CIRCUIT COURT DID NOT DENY
THE APPELLANT HIS RIGHT TO CONFRONT WITNESSES
AGAINST HIM WHEN IT ALLOWED THE SUPERVISING
MEDICAL EXAMINER TO TESTIFY ABOUT THE FINDINGS
OF THE AUTOPSY CONDUCTED ON THE VICTIM.**

Dr. Charles Kokes, under the supervision of Dr. William Sturner, conducted the autopsy on the victim.  Dr. Sturner reviewed Dr. Kokes' findings, agreed with them, and "signed out" on the report before it was distributed to the appropriate agencies.  (R. at 898-99)  The prosecution called Dr. Sturner as an expert witness to testify about the findings contained in the autopsy report.  The Appellant objected to Dr. Sturner's testimony on the basis that it violated his right to cross-examine Dr. Kokes.  (R. at 900-02, 925-28)  The circuit court overruled the objection and found that the jury could appropriately weigh Dr. Sturner's testimony.  (R. at 902, 928)  On appeal, the Appellant contends that the circuit court denied him the statutory right to confront and cross-examine Dr. Kokes pursuant to Ark. Code Ann. § 12-12-313 (Repl. 1995).

The Appellant failed to preserve this issue for review.  The Appellant's objection below made no reference to Ark. Code Ann. § 12-12-313.  It is axiomatic that an Appellant must have presented to the court below any issue he wishes to raise on appeal so that the court below may issue a ruling.  *See Dulaney v. State*, 327 Ark. 30, 33, 937 S.W.2d 162, 164 (1997).  Even constitutional issues are not considered for the first time on appeal.  *Id.*

Even if the Court finds that the Appellant's objection was based on a statutory right of confrontation, the circuit court still did not have the opportunity to rule on the issue because the basis of the Appellant's argument to this Court is different than what he presented to the circuit court.  The Appellant alleges on appeal that he subpoenaed Dr. Kokes and therefore met the requirement of Ark. Code Ann. § 12-12-313 (d)(2) that a defendant give ten days' notice if he wishes for the employee who performed the analysis to be present for cross-examination. Below, however, the Appellant told the circuit court upon direct questioning that he *did not* subpoena Dr. Kokes.  (R. at 927)  For the purposes of argument only, if a subpoena qualifies as notice to the State to produce the employee who performed the analysis, the circuit court did not deny the Appellant any statutory right to confrontation when he asserted to the circuit court that he *did not* subpoena Dr. Kokes.  Again, the issue is not preserved for appeal because the circuit court did not have the opportunity to properly rule on the issue due to the Appellant's assertion at trial that differs from his assertion on appeal.  *See Dulaney, supra.*

Moreover, the Appellant's contention "that the trial court should have granted a continuance so the State could produce" Dr. Kokes is not preserved because he never requested a continuance below.  "It was appellant's burden to request curative relief, and his failure . . . cannot inure to his benefit on appeal." *Ashe v. State*, 57 Ark. App. 99, 110, 942 S.W.2d 267, (1997).  In any event, his reliance on *Hendrix v. State*, 40 Ark. App. 52, 842 S.W.2d 443 (1992), for that

proposition is without merit because this Court has limited *Hendrix* to the facts of that case.  *See Dodson v. State*, 326 Ark. at 647, 934 S.W.2d at 203.

In the alternative, even if the issue was properly preserved for appeal, the Appellant's contention is without merit because he fails to show that he gave the State ten days' notice prior to trial to produce Dr. Kokes.   Ark. Code Ann. § 12-12-313(d)(2).   Again, the Appellant attempts to create notice out of his subpoenas to Dr. Kokes which he points to for the first time on appeal.  In doing so, the Appellant cites Ark. Code Ann. § 12-12-313(c) in support of his argument.  That statute, however, simply provides that the testimony of the appropriate analyst may be compelled by subpoena.  Ark. Code Ann. § 12-12-313(c).  It then notes, "in which case the records and reports shall be admissible through the analyst who shall be subject to cross-examination by the defendant or his counsel." Ark. Code Ann. § 12-12-313(c).  By implication, the statute does not mandate that a defendant subpoena a state crime lab employee as part of notice of intent to cross-examine.

Ark. Code Ann. § 12-12-313(c) not only gives the State the power to compel crime lab employees to testify about the analyses they perform, it implies that employees other than the employee performing the analysis may testify to the results of a report.  Indeed, Ark. Code Ann. § 12-12-313(a) explicitly provides that reports of autopsies by the State Crime Laboratory shall be competent evidence "when duly attested to by the executive director or his assistants, associates, or deputies."  It in no way limits attestation to only the employee who performed the autopsy.  To hold otherwise would limit the purpose of the statue, which "is to

remove crime lab reports from exclusion under the hearsay rule and make them admissible when certain requirements designed to establish their trustworthiness have been satisfied." *Dodson v. State*, 326 Ark. 637, 645, 934 S.W.2d 198, 202 (1996).

The Appellant fails to show that he gave the State ten days' notice of an intent to cross-examine Dr. Kokes as he was required to do. *Id*. at 647, 934 S.W.2d at 203. And, despite the Appellant's assertion that Dr. Kokes could have testified to "important facts," he fails to show how his inability to cross-examine Dr. Kokes prejudiced him. *See id*. The Appellant simply makes a bare assertion without argument as to how cross-examination "would have availed him anything." *Id*. As such, the circuit court did not err in allowing Dr. Sturner to testify. The Appellant's argument is without merit and his case should be affirmed.

## RULE 4-3(H) CERTIFICATION.

Appellant received a life sentence without parole. Pursuant to Arkansas Supreme Court Rule 4-3(h), the Attorney General reviewed the entire record on appeal for points of prejudicial error and prepared a supplemental abstract. Based on an examination of the record, the State believes that no other issues in the case, other than those addressed by the parties, involve potentially prejudicial error to Appellant.

## CONCLUSION

Based upon the foregoing reasons and legal authorities cited, the Appellee prays that this Court find the Appellant's appeal to be without merit and to affirm in all respects the judgment and sentence of the circuit court.

Respectfully submitted,

WINSTON BRYANT
Attorney General

BY:   MAC GOLDEN
Arkansas Bar No.  97156
Assistant Attorney General
200 Catlett-Prien Tower Building
323 Center Street
Little Rock, Arkansas  72201
(501) 682-1786

ATTORNEYS FOR APPELLEE

Marta.cr98-105

.