IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

YITZHAK ABBA MARTA     PETITIONER

VS.    CV-2005-380-5
No. CR-16-1737

LARRY NORRIS, DIRECTOR     RESPONDENT
ARKANSAS DEPARTMENT OF CORRECTION

## HABEAS CORPUS PETITION

(ACA 16-112-101-123

Comes now the Petitioner, Yitzhak Abba Marta, (Issac), ADC# 102554, and for his pro se Habeas Corpus Petition for absolute dismissal of the criminal conviction against him, alleges and states:

1. That Petitioner, an indigent, is a prisoner in custody of the Arkansas Department of Correction, Tucker Maximum security Unit, under sentence of the Circuit Court of Washington County, Arkansas, having been sentenced on July 11, 1997, for conviction of a felony.

2. That said conviction was based on information or warrant filed against Defendant/Petitioner on or about November 13, 1996, accusing the Defendant/Petitioner of the offense of Count One-Capital Murder in violation of Ark. Code Ann. 5-10-101 (a)(2), a class Y felony.

3. That Petitioner is being held unlawfully and this Court has jurisdiction pursuant to the Arkansas Constitution and Arkansas Code Annotated 16-12-101 ET seq.

4. That the Trial Court lacked jurisdiction and the Petitioner is held pursuant to an invalid conviction. Petitioner bases this allegation upon the following facts:

1

FILED IN MY OFFICE AND SUMMONS
ISSUED AT 1:00 O'CLOCK PM
5-23-05 DATE
FLORA C. COOK, CLERK
Brenda Hardin DC

34544

## GROUND ONE

The Trial Court lost jurisdiction over the above styled criminal case when it allowed for United States and Arkansas Constitutional and Statutory violations to occur at trial.

United States Constitutional acts 3.2(d): *"The trial of all crimes, except in cases of impeachment, shall be by jury;"* United States Constitutional Amendment 6 states: *"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district where in the crime shall have been committed,"* these being made applicable to me by United States Constitutional Act 6, -2: *"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."*

And, United States Constitutional Amendment 14, -1: *"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or amenities of the citizens of the United States; nor shall any state deprive any person of the life, liberty, or property, without due process of the law; nor deny to any person within its jurisdiction the equal protection of the law."*

Also, Arkansas Constitutional Act 2, -10: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by impartial jury of the County in *which the crime shall have been committed.*" This right to a trial by an impartial jury was violated. To wit: In the 'Supplement Abstract for the Appellant, ' page 20 notes that the Defense filed a 'Motion for Yitzhak Abba Marta to Appear at all Court Appearances in Civilian Clothing and Without Restraint.' This motion was not responded to by the prosecution, and as all other motions were, until the Omnibus Hearing. In the motion Defense Counsel, Denny Hyslip, wrongly cited the A.R.Cr.P. on this matter as rule 33.1, which was changed approximately a year before this case. The State of Arkansas adopted a new Rule, 33.1 and numbered it as 33.4, which states: Custody and Restraint of Defendants and Witnesses: "Defendants and Witnesses SHALL NOT be subjected to physical restraint while in Court unless the Trial Judge has found such restraint reasonably necessary to maintain order. If the Trial Judge orders such restraint, he SHALL enter into the record of the case the reasons therefor. Whenever physical restraint of a Defendant or a Witness occurs in the presence of the jurors trying the case, the Judge shall upon request of the Defendant or his Attorney instruct the jury the such restraint is not to be considered in assessing the proof and determining guilt."

This was addressed on pages of 92-97 of the Supplement Abstract for Appellant. Defendant was on trial for 3 days and completely shackled, i.e. handcuffed to a belly chain and in leg irons during the entire trial, including voire dire, except for the time allowed for Defendant to take the stand, at which time the belly chain swung from the waist of Defendant. The leg irons were left on at all times and Defendant had to hobble by the jury.

Docket Sheet record indicating the Defense's Motion for Defendant to appear in Court without restraints. Bruce Rhoades objected to the Defense Motion, which is found on page 94 of the trial record. Mr. Rhoades suggested the leg shackles could be taken off prior to the jury entering into the jury box if the Defendant was going to testify, but asked that the leg shackles be left on otherwise. Mr. Rhoades gave no reason for wanting to keep Defendant in handcuffs and leg irons while in front of the jurors. The trial record quotes Mr. Rhoades: "And I would ask that the shackles be left on, the leg shackles..."

First, the State concedes that, with respect to trial, shackling Defendant in front of the jury would be a problem. Mr. Rhoades started to contend Defendant's appearance in court in street clothes, but that was not, as the Court noted, any real concern of the State. As to the restraints, as A.R Cr.P rule 33.4 notes, the Judge must *order this and detail his reasoning for the record in court.* From the record (pg.93) the Court responded to defense attorney, Mr. McLemore's request that the Court order the jail to make sure the Defendant is in "street clothes and not shackled or cuffed for all future court appearances." The court responded, "Well, I'm not going to issue an order, but if you have a problem with it, you let me know and I'll address it." Clearly, the Court sided with the Prosecution. Then, after the above request by Mr. Rhoades, the Court says, "Well, I've already denied their motion." Mr. Rhoades continues his argument and the Judge states: "Here's what I'm going to do. I'm going to address the issue with the Sheriff and if it's a problem, we'll proceed accordingly. I think traditionally in these cases people who are in custody and brought up here for these hearings and other hearings in jail clothing and restrained appropriately. I see no real reason to do it here, but I dressed in, for lack of a better description, civilian clothes. Today, apparently there was

4

not. I don't know what happened in terms of what took place with the Sheriff's department on this issue, but I'll look into it. I'll address it. Plaintiff contends that this unconstitutional tradition and the Courts ignoring A.R.Cr.P Rule 33.4 even after the Defense brought it to his attention, seems from the record, to be systematic. After defense attorney Mclemore tried again he leaves his motion by stating, "It worked informally properly here and I'm going to ask that we be permitted in your eyes to do it again." The Court responded, "Well, I'm not going to permit anybody to do anything until I have an opportunity to discuss the issue with the Sheriff. He operates the jail...and if it can be done without an undue burden to the Sheriff and his staff, well, then, we'll probably do it. But, if it causes problems, we may not do it. But I will, at the conclusion of this hearing or certainly within the next day or so, address this issue and try to resolve it."

The Court's own words have no reflection or concern for the security risk pertaining to Defendant, but an *"undue burden to the Sheriff and his staff."* No concern regarding Defendant's rights under the law was manifested, but simply a concern for what the Sheriff wanted and what the prosecution wanted.

Defendant had not given the jailers any problems whatsoever, was never a security risk at any time, and was under a two hundred and fifty thousand dollars bail. There was no issue of escape attempts, or other conduct charges before the trial. Defendant had always maintained his innocence and was confident that the trial would prove his innocence, therefore, was doing nothing that would jeopardize his exoneration.

Rule 33.4 states: *"Defendant...shall not be subjected to physical restraint while in court (not just at trial) unless the trial judge has found such restraints reasonably*

5

*necessary to maintain order."* Defendant was clearly no security risk at any time during incarceration prior, or during the trial.

Given these facts and circumstances, Defendant asserts the trial judge was clearly in error in ignoring Rule 33.4 for no other obvious reason than to satisfy the Prosecutor under the guise of having concerns for possibly what the Sheriff might wish. Defendant contends that the sole decision rests with the Court, not the Sheriff or the Prosecution. It is apparent that clothing which Defendant wore was the only concern with the Court, not handcuffs and shackles. The appearance of Defendant before the jury was not a concern of the Court because at no time did the Court enter into the record an order, or his reasons for Defendant being completely restrained. The Court did not instruct the jury *that such restraint is not to be considered in assessing proof or determining guilt.* The Court stated that he would address the issue, but never did. The shackles and restraints were clearly visible for the jury irrespective of Rule 33.4.

The Arkansas Supreme Court in Baker v. State, 308 Ark. 266 decided a similar case to this case of Defendant-Petitioner, but of less magnitude, but to the extent of prejudice resulting from the Defendant appearing in restraints. In that case the Court said, "Here we can safely assume that Townsends comings and goings in leg irons through the front door of the courtroom and in full presence of the jury, did not go unnoticed..."

"Although there is sufficient circumstantial evidence to convict both Townsend and Baker, we should view the effect, if any, that the placing of Townsend in leg assessment of punishment for the two parties..." " Similarly, the resulting prejudice, here, warrants a new trial for both appellants."

The disregard for the Arkansas Rule of Criminal Procedure 33.4, in pursuance of

6

the Federal and State Constitutions denied Petitioner the right to a fair trial by an impartial jury. In Hallbrook v. Flynn, 475 U.S.560, the U.S. Supreme court said, "Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that *"one accused of a crime is entitled to have his guilt or innocence determined sole on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, or continued custody, or other circumstances not addressed as proof at trial."*

Citing Taylor v. Kentucky, 436 U.S. 478, the degree of prejudice Petitioner received during three days of exposure to the jury while hobbling by them in shackles is immeasurable, but must be conceded in light of other rulings based upon the law pertaining thereto. This is reflected in the case of Kennedy v. Cardwell, 487 F.2d 101 (6th Circuit 1973)

Petitioner asserts that the Trial Court lost jurisdiction by Trial Court's ignoring the law governing shackles and other restraints before a jury. In Ellege v. Dugger, 823 F.2d 1439 (11th Cir. 1987) the Court said, "Initially, the prejudice perceived when a defendant is seen in shackles by the time the jury involves the presumption of innocence, there could be no impartial jury or presumption of innocence, if I was already shackled down like a guilty criminal, a crazed uncontrollable psychopathic killer."

Arkansas Rule 33.4 specifies that not even witnesses can be subject to restraint without an order on record and the reasoning for such order. Petitioner's five witness from the jail were restrained, thereby subjecting the jury as the credibility of their testimony. The record reflects these witnesses by name: Mark Killion, Guillermo Roca, Johnny Marney, Billy Roe, and Philip Guartney. Petitioner asserts that 75 A.L.R/ 4th

7

1356 prohibits witnesses from being in restraints while before a jury.

U.S. Constitutional trial law, as well as Arkansas Trial law support the assertion of Petitioner that the Trial Court lacked the jurisdiction to enforce judgment and commitment. (See: California v. Minor, 42 Cal 165 1871; Hall v. Indiana, 199 Ind. 592 (1928); Blaine v. U.S. App. D.C. 64(1943); Smith v. State, 247 Ala.354(1946); Eaddy v. The People, 115 Colo. 488 (1946) New York v. Mendola, 2 N.Y. 2d 270 (1957); Illinois v. Boose, 66 Ill.2d 261 (1977); Washing v. Hartzog, 96 WA 2d 383 (1981); New York v. Vigliotti, 203 A.D. 2d 898 (1944); Washington v. Finch, 137 Wa 2d 799 (1999);

Regarding the rules of law regarding this case, Petitioner prays the Court reverse and remand for a new trial.

Respectfully Submitted,

*Signature*

Yitzhak Marta

M.S.U # 102554

2501 State Farm Rd.

Tucker, AR 72618

On the 19th day of April 2,005

Casey M——
Notary

9-30-2,007
Commission Expire

8

```
CMSOFM10                WASHINGTON CO - CRIMINAL CASES  Today's Date 09/01/04
  PARTY DOCKET                  DISPLAY CASE
Case          96-CR  -001739  Case Party 0002              Roll         Fr
Type/Desc   CAPITAL MURDER            Arrest Tracking 400393
Filing      12/16/96           Arrest                          Warrants  0
CASE TYPE     MR              Offense 11/08/96                 Inactive  0
Show Cause?                   Trial         TIME    :    M     ACT 346   0
Court #                       Last Trans 02/04/99 Reop         Hot Checks 0
Last Status   CLJC.............on 07/11/97                 Fine $      .00
-----------------------------------------------------------------------------
Actions  02/11/97 --M HUDSON
                  BRIEF IN SUPPORT OF INDIVIDUAL
                  --SEQUESTERED VOIR DOIRE   D HYSLIP
                  --K MCLEMORE  M HUDSON
                  MOTION REQUESTING INFORMATION
                  --CONCERNING THE CHARACTER OF THE
                  --VICTIM  D HYSLIP K MCLEMORE  M HUDSON
                  MOTION FOR YITZHAK ABBA MARTIN TO APPEAR
                  ---AT ALL COURT APPEARANCE IN CIVILIAN
                  --CLOTHING AND WITHOUT RESTRAINT
                  --D HYSLIP   K MCLEMORE  M HUDSON
                  MOTION TO COMPEL STATE TO CONDUCT TRIAL
```

# DUNN'S INVESTIGATIONS, INC.

212 Valley View Church Rd
Harrison, Arkansas 72601
870-391-3696

January 25, 2005

The Honorable Justices ▮▮▮▮ of Jefferson County,
▮▮▮▮▮▮▮▮▮▮▮▮

Re: Yitzhak Marta #102554

▮▮▮▮

  Mr. Marta has asked me to submit a letter to you in his behalf. I have typed the Petition for him and made some corrections by omitting some things that appeared to be not on point.

  First, let me say that I did not know Mr. Marta prior to his incarceration in the Washington County jail at Fayetteville. His father, the late Frank Marta, had me investigate the circumstances surrounding the arrest. I went to the jail with an attorney friend of mine and took a recorded statement. Mr. Marta mistakenly thought that if one is innocent it would result in his being freed and would not put his family to the expense of hiring an attorney. As a result, he relied on the public defender.

  The Deputy Prosecutor was Mr. Bruce Rhoades and I must say, the most unscrupulous and unethical individual I have met in my 38 years of professional investigation. He intimidated Mr. Marta's wife, who was extremely ignorant of the law, and threatened her with charging her as an accomplice to murder. Nothing could have been further from the truth. He told her that if she did not "cooperate" with her and say what her wanted her to say, she would be charged.

  Another man, a druggie and drifter from California, is the person who robbed and killed the victim. There was no proof that Mr. Marta was present when the murder occurred. Mr. Rhoades knew that and made a deal with the real killer, Adam Blackford, to implicate Mr. Marta solely for the pleasure of getting two convictions.

  Mr. Marta was at home in bed with his wife and had been drinking heavily and was sound

Mr. Marta was at home in bed with his wife and had been drinking heavily and was sound asleep when Adam Blackford left the premises of Mr. Marta's home. As it turned out, he went back to murder and rob the victim. He subsequently took deputies to the place he had disposed of the stolen items.

Blackford also had blood on one of his boots that matched the victim's blood. However, there was not one iota of forensic evidence that connected Mr. Marta to the scene. Other prisoners were interrogated by me and they related that they heard Blackford tell Mr. Marta that he (Blackford) knew that Marta did not do it, but he had a "deal with the Prosecutor." When Rhoades learned that I had attempted to get Blackford to talk to me, he wrote a letter to the Sheriff asking that I be banned from the jail. He subsequently issued a subpoena for me and attempted to force me to disclose my investigation. He even threatened me with bodily harm if I did not cooperate. I had to get an attorney to get it squelched.

Mr. Marta's wife told me that Mr. Marta was home in the bed on the morning of the murder. She also told her sister, but on the date of trial neither of us were called to impeach her testimony. Prior to that all the statements I took were turned over to Mr. Rhoades by the Public Defender without my knowledge or consent. That is when Mr. Rhoades turned up his harassment toward me.

In summation, Adam Blackford was sentenced to 30 years with 15 years suspended and imprisoned in California where there was a warrant for him on an unrelated charge. Mr. Marta, on the other hand, was sentenced to life without parole for a murder he did not commit. He mistakenly thought that the innocent is always exonerated. Ignorance of the value of good representation is his only crime and for that he is punished for life without parole.

I know as much as anyone can, that Yitzhak Marta is not guilty of that which he is accused. I hope you will consider his Petition for a Trial de Novo and correct a horrible injustice.

Respectfully yours,

Don H. Dunn

ARKANSAS DEPARTMENT OF CORRECTION - TRUSTFUND CENTRALIZED BANKING - PINE BLUFF

Task No: 1540018
Task Date: May 3 2005 2:00PM
Task Type: Resident Withdrawal
Bank Acct: Trust
Check No: 32998
Pay To: Jefferson County Circuit Clerk
Amount: 100.00
Memo: Y Marta 102554/File fee/Corpus Petition
Comment: Jefferson Co. Circuit Clerk/Filing fee
Resident Id: 102554
Personal Id: 102554
Full Name: Marta, Yitzhak
SSN:
Date of Birth: Aug 13 1975 12:00AM

---

ORIGINAL CHECK HAS AN ARTIFICIAL WATERMARK ON REVERSE SIDE - HOLD AT AN ANGLE TO VIEW

**ARKANSAS DEPARTMENT OF CORRECTION**
TrustFund Centralized Banking
P.O. Box 8908
Pine Bluff, AR 71611-8908

Bank of America   81-7/820   032998

5/3/2005   $100.00
DATE   AMOUNT

One Hundred and 00/100 Dollars

PAY TO THE ORDER OF  Jefferson County Circuit Clerk
Jefferson County Circuit Clerk
P. O. Box 7433
Pine Bluff, AR 71611

CV 05-380-5

Y Marta 102554/File fee/Corpus Petition

⑈032998⑈ ⑆082000073⑆ 0041634322707⑈

ARKANSAS DEPARTMENT OF CORRECTION - TRUSTFUND CENTRALIZED BANKING - PINE BLUFF